UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIRK ACREY,

    *Plaintiff*,             CASE NO. 13-CV-11214

v.                             DISTRICT JUDGE TERRENCE G. BERG
                             MAGISTRATE JUDGE PATRICIA T. MORRIS

ZESTOS,[1] and MALATINSKY,

    *Defendants*.[2]
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**
**(Doc. 16)**

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED**.

## II.  REPORT

### A.  Introduction

On March 19, 2013, Plaintiff Kirk Acrey filed this *pro se* prisoner civil rights complaint pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).[3] The events giving rise to the complaint occurred while Plaintiff was incarcerated at

---

[1] Although the docket refers to this Defendant as "Zesto," I note that he refers to himself as "Zestos."

[2] Other Defendants were terminated from the case on June 26, 2013.

[3] A *Bivens* action is a "judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors." *Yeager v. General Motors Corp.*, 265 F.3d 389, 398 (6th Cir. 2001). It is "the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 255 n.2, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006).

the Federal Correction Institution at Milan (FCI Milan).  Defendant Dr. Malatinsky is the clinical director at FCI Milan who provides medical treatment and supervises other clinical staff, and Defendant Zestos is an administrator responsible for FCI Milan's health services budget, staffing, accreditation, and other administrative responsibilities.

Magistrate Judge R. Steven Whalen granted Plaintiff's application to proceed without prepayment of fees (Doc. 6) and on June 26, 2013, U.S. District Judge Terrence G. Berg entered an Order of partial summary dismissal resulting in the termination of several Defendants. (Doc. 7.)

On February 14, 2014, Defendants Malatinsky and Zestos filed a motion to dismiss or for summary judgment. (Doc. 16.)  Defendants contend that although Plaintiff properly exhausted his claim that he was denied "soft shoes" and a "soft shoe pass[,]" Plaintiff failed to properly exhaust his claim that Defendants failed to treat the neuropathy in his feet. (Docs. 16, 26 at 3.) In addition, Defendants argue that even if all the claims were all properly exhausted, they are entitled to qualified immunity. (Doc. 16, 26.) Plaintiff responded to the motion (Doc. 24,) and Defendants replied. (Doc. 26.)  On May 6, 2014, the case was referred to the undersigned magistrate judge for purposes of conducting all pretrial proceedings. (Doc. 22.)  I therefore find that the motion is ready for determination without oral argument under Local Rule 7.1.

   **B.   Governing Law**

A civil rights action under 42 U.S.C. § 1983 or *Bivens* consists of two elements: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt*

2

*v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

Defendant has raised the defense of qualified immunity, which "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

The Supreme Court has clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### C.     Analysis and Conclusions

Defendants contend that although Plaintiff properly exhausted his claim that he was denied "soft shoes" and a "soft shoe pass[,]" Plaintiff failed to properly exhaust his claim that Defendants failed to treat the neuropathy in his feet. (Docs. 16, 26 at 3.) In addition, Defendants argue that even if all the claims were all properly exhausted, they are entitled to

4

qualified immunity. (Doc. 16, 26.)  Since the issue of qualified immunity is dispositive regarding both claims, I will address only that issue.

First, as to whether a constitutional violation occurred, "[t]he Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

An Eighth Amendment claim requires that the plaintiff make a showing of deliberate indifference. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); *see also Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In dealing with deliberate indifference claims in the past, the Sixth Circuit has enumerated several specific types of claims for factual scenarios that frequently arise. These types include, but are not limited to, conditions of confinement, excessive force, and medical needs. *See, e.g., Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (conditions of confinement and excessive force); *Harrison*, 539 F.3d at 518 (medical needs).

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

5

A violation of the Eighth Amendment can be "manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298.

As the Supreme Court recognized in *Estelle*, differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

Plaintiff was transferred to FCI Milan on October 18, 2011.  The evidence submitted shows that upon arrival, Plaintiff's health was evaluated, he was noted to have diabetes for which he was insulin dependent, he was noted to have hyperlipidemia, and anemia, and his prescription medications were reviewed. (Doc. 16 at ID 152-57.)  There were no other

6

symptoms or medical issues either reported by Plaintiff or noted by the nurse or Defendant Malatinsky.

On October 19, 2011, Plaintiff was again seen and was given his prescription medication. (Doc. 16 at ID 158-59.) On October 21, 2011, Plaintiff was again seen by Dr. Malatinsky, Plaintiff reported he was "[d]oing well" and was "[t]rying to take good care of himself." (Doc. 16 at ID 160.) Plaintiff also reported that he had "[n]o edema and has polyneuropathy of his feet. Needs bottom bunk and special shoes." (*Id.*) Upon examination, Dr. Malatinsky did not find any neuropathy or other problems with Plaintiff's feet. (Doc. 16 at ID 160-64.)

On November 28, 2011, a clinical note indicated that Plaintiff "[w]ants soft shoe permit." (Doc. 16 at ID 165.) On December 5, 2011, Plaintiff stated that he "needs soft shoes because the boots hurt his feet." (Doc. 16 at ID 166.) Plaintiff was examined by Dr. Malatinsky and Dr. Malatinsky found that his feet were in "goo[d] health" and that his polyneuropathy was in "[r]emission" so he concluded that there was "[n]o apparent reason for soft shoes." (*Id.*) Dr. Malatinsky "[d]iscussed foot care" with Plaintiff and Plaintiff 'refused cushioned insoles" and stated that "he will not wear the boots." (Doc. 16 at ID 168.) Dr. Malatinsky told Plaintiff that "he only needs to wear the provided shoes during work and at visits where he would be sitting" and "[e]xplained the need for foot protection because of the Neuropathy" and noted that Plaintiff "was not happy with decision." (*Id.*)

On January 5, 2012, Plaintiff was seen by a physician assistant who noted that Plaintiff reported he was "[d]oing well" and was taking his prescribed medication "without side effect[s]." (Doc. 16 at ID 169.) Plaintiff did not complain about his feet or footwear. Upon

7

examination, Plaintiff's feet were found to be normal and "[n]euorvascular[ly] intact" with no edema or swelling. (Doc. 16 at ID 170.)

On March 28, 2012, Plaintiff reported that he was "[d]oing well" and "[o]nly takes his insulin" because "[h]e doesn't feel he needs the rest of the medication." (Doc. 16 at ID 172.) Plaintiff also reported "[n]o edema or foot problems." (*Id.*)  Upon examination, Plaintiff's feet were normal and his foot sensation to "[m]onofilament [was] 8/8 bilaterally" and to "128 tuning fork [was] 100% bilaterally." (Doc. 16 at ID 173.)

On August 7, 2012, Plaintiff filed a grievance indicating that his "outside doctor prior to incarceration told me that I have neuropathy[,]" that he was given soft shoes at the last federal institution where he was incarcerated, and that he wanted soft shoes and a soft shoe pass and that his "feet are swelling up every night." (Doc. 16 at ID 191.)  Plaintiff's grievance was denied and on September 20, 2012, Plaintiff appealed the denial of his grievance. (Doc. 16 at ID 193.)  Plaintiff's appeal was denied on September 26, 2012, and Plaintiff was informed that if he was dissatisfied, "you may appeal to the Office of General Counsel, Federal Bureau of Prisons..." and that his "appeal must be received in the Office of General Counsel within 30 days from the date of this response." (Doc. 16 at ID 194.)

On September 26, 2012, Plaintiff was seen by Dr. Paul Harvey, and Plaintiff "complains that he wants soft shoes" but Dr. Harvey noted that "he works in Recreation and moves the weights." (Doc. 16 at 177.)  Plaintiff reported that he was "doing otherwise well." (*Id.*)  Dr. Harvey examined Plaintiff and found all systems were normal other than Plaintiff's diagnoses of diabetes, hyperlipidemia, retinopathy and mild kidney disease. (Doc. 16 at ID 178.)

On October 11, 2012, Plaintiff filed an appeal to the Central Office complaining that staff at FCI Milan refused to give him a soft shoe pass and that he was "forced to wear the prison issue boots" and that he had "developed bruising." (Doc. 16 at ID 195.) This appeal was denied on January 4, 2013. (Doc. 16 at 196.)

On March 20, 2013, Plaintiff was seen by Dr. Malatinsky who noted that Plaintiff reported he was "[d]oing well[,]" taking his medications "without side effects[,]" "[f]eels good" and reported no "[n]euro complaints" and "[n]o edema or foot problems." (Doc. 16 at ID 180.) Upon examination, Plaintiff's foot sensation to "[m]onofilament [was] 10/10 bilaterally" and to "128 tuning fork [was] 100% bilaterally." (Doc. 16 at ID 181.)

On June 18, 2013, Plaintiff was examined by a physician assistant and Plaintiff "[d]enies any CV, pulmo, GI, GJ or foot problem." (Doc. 16 at ID 184.)  Upon examination, Plaintiff's feet were found to be normal. (Doc. 16 at ID 185.)

I suggest that these facts cannot support a claim for deliberate indifference under the Eighth Amendment.  Plaintiff seems to rely on the fact that he was formerly diagnosed with neuropathy and that he should therefore receive soft shoes to address potential symptoms of the former diagnosis.  However, during the entire time spent at FCI Milan, none of the symptoms of neuropathy were either reported by Plaintiff or found to exist when examined by medical staff. Plaintiff received regular and frequent medical attention, he never reported any actual foot problems during those session, and examinations of his feet consistently found that his feet were normal and that his sensations in his feet were intact bilaterally.  Plaintiff's disagreement with Dr. Malatinsky's decision not to prescribe soft shoes does not evince deliberate indifference. *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007)(affirming summary

9

judgment for prison doctor who examined plaintiff and concluded that special shoes were not necessary despite outside podiatrist's prescription for special shoes); *Turner v. Solorzano*, 228 F. App'x 922, 923-24 (11th Cir. 2007)(affirming summary judgment against a prisoner who had an amputated toe but was not prescribed soft shoes); *Ganstine v. Buss*, No. 4:11cv88-RH/WCS, 2011 WL 6780956, at *3 (N.D. Fla. Dec. 27, 2011)(failure to prescribe soft diabetic shoes by doctor who examined the plaintiff and found he did not need soft shoes was not deliberate indifference).

Instead, I suggest that the facts show deliberate concern that Plaintiff should not wear soft shoes since he was working in recreation and lifting weights, such that he would need the protection that the boots would provide.

Accordingly, I suggest that since Plaintiff cannot show, under these facts, that any Defendants violated his Eighth Amendment rights, Defendants are entitled to qualified immunity. I further suggest that even if there had been some evidence of deliberate indifference, which there was not, Defendants would nonetheless be entitled to qualified immunity because their actions were not objectively unreasonable in light of the clearly established constitutional rights. *Radvansky,* 395 F.3d at 302.

I therefore recommend that Defendants' motion for summary judgment be granted.

## III. **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 7, 2014      /S PATRICIA T. MORRIS
                          Patricia T. Morris
                          United States Magistrate Judge

11

## **CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was served on Kirk Acrey, #19403-424, USP Leavenworth, P.O. Box 1000, Leavenworth, KS, 66048

Date:  August 7, 2014                    By     s/*Jean L. Broucek*
                                                    Case Manager to Magistrate Judge Morris